# IN THE COURT OF APPEALS OF IOWA

No. 19-0723
Filed July 3, 2019

IN THE INTEREST OF K.I.,
Minor Child,

C.I., Mother,
        Appellant.
_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Jeffrey A. Smith, Oskaloosa, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Eric Palmer, Oskaloosa, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., Doyle, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

A mother appeals the termination of her parental rights to her child, born in 2014.[1] She does not challenge the sufficiency of the evidence supporting the statutory grounds for termination.[2] Instead, the mother makes several interrelated arguments contending termination of her parental rights is not in the best interests of the child. When we consider whether it is in the best interests of the child to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Upon our de novo review of the record, *see In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019), we conclude the State proved the termination of the mother's parental rights is in the best interests of the child.

The department of human services (DHS) became involved with this family in July 2017, when the child was admitted to Blank Children's Hospital with a severe infection, high temperature, chronic vomiting, and chronic diarrhea. The child's weight was in the 1.7th percentile, and a founded report was issued for denial of critical care for failure to provide food and failure to provide proper medical care. The mother was disruptive and aggressive to hospital staff. She admitted to using marijuana, and she tested positive for methamphetamine, cocaine, and marijuana. The mother consented to the child's adjudication as a child in need of

---

[1] The father's parental rights were also terminated. He does not appeal.

[2] Consequently, "we do not have to discuss this step," *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), and we conclude there is clear and convincing evidence authorizing the termination of the mother's rights pursuant to Iowa Code section 232.116(1)(f) (2019).

assistance, and the child was removed from her care and placed in family foster care, where she has remained since.

DHS initiated services to address concerns with the mother's substance abuse and her ability to properly care for the child after testing revealed the mother's lower mental functioning. There were also concerns about domestic violence between the parents. The father was incarcerated at the time of the child's removal. The mother participated in services and successfully completed substance-abuse treatment. Visits progressed to semi-supervised. Upon his release from prison in February 2018, the father also participated in services, although he was frustrated with having to do so because he denied doing "anything wrong." Visits "backtracked" to fully supervised because the parents "wanted to be together" and caseworkers had substantiated concerns about ongoing domestic violence. DHS offered additional services it felt would be beneficial to the mother, but she "didn't feel like she needed those," which caseworkers believed showed a lack of insight on her behalf.

Nevertheless, the parents were granted an additional six months to work toward reunification. Around August, the father was arrested for domestic violence against the mother. Days after his release from jail in October, the father was arrested again for having contact with the mother in violation of a no-contact order. By December, DHS changed its recommendation to termination of parental rights due to "very big safety concerns" after it became clear the mother was "not being honest" and continued to have contact with the father and allow the father to be around the child. Around this time, the mother was also arrested for violation of the no-contact order.

Meanwhile, the child was diagnosed with a chromosomal defect, which required intervention by specialists and that the child receive special care at home and attend many appointments. A caseworker opined the mother did not have the ability to attend to the child's health needs on an "ongoing" basis without assistance. Even without considering the child's medical diagnosis, the caseworker believed the mother "struggle[s] to take care of [herself] independently and then adding in a child would set the child up for failure."

At the time of the termination hearing in March 2019, caseworkers opined the mother had "exhausted all services" and the child could not be returned to her care. Caseworkers were unaware where the father lived but stated "the concerns with ongoing contact between the parents" remained such that termination was warranted. Caseworkers also opined the mother's lower mental functioning impacted her decision-making and her ability to safely parent the child on an independent basis. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) ("We have said that a parent's 'lower mental functioning alone is not sufficient grounds for termination.' But where it affects the child's well-being, it can be a relevant consideration." (citation omitted)). Ultimately, the juvenile court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(f).

On appeal, the mother contends she "suffers from what some would call battered wife syndrome,"[3] but "[i]f she was giv[en] additional time [she could] prove that she could protect the child from her father." We observe the mother was

---

[3] *See Linn v. State*, ___ N.W.2d ___, ___, 2019 WL 2482511, at *30 (Iowa 2019) (observing both physical and psychological abuse can cause battered wife syndrome).

granted a six-month extension in August 2018, and she did not request an additional extension at trial. The mother has not preserved error with respect to this issue. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to . . . termination of parental rights cases.").

But even if the mother had preserved error, her claim is unavailing. Caseworkers testified the mother was "not being honest" about her contact with the father and she had a lack of "follow through." As one caseworker observed, "I continuously—after the domestic in August—had conversations with her about domestic violence counseling, and I don't believe that she ever engaged or took that seriously. I don't believe she engaged in those services and that she really felt like those were not needed for her." Another caseworker opined the mother had opportunities to make progress outside of her relationship with the father, but she failed to do so:

> [T]here's times that [the father] was incarcerated, or as of right now, we don't know exactly where he's at and that didn't have an effect on how [the mother] did with her services. It didn't have an effect on how she processed the things that were explained to her. It didn't have an effect on, you know, all the different things that we have tried to provide for [the mother]. It didn't have an effect on whether or not they were violating the no-contact order or show how she was learning to become a better parent.

The caseworker further testified, "I think that even with all the services that were offered to [the mother], long-term and ongoing, I think it would continue to be a struggle, and I don't think she could continue to provide the care that is needed for [the child]." The juvenile court observed, "All of the problems that were present at the outset of the case remain, even after additional services were provided over

the months during which an extension of time to work toward reunification was granted." A de novo review of the record supports the court's observation.

The mother also contends termination is not in the child's best interests because of the bond between her and the child. This challenge implicates section 232.116(3)(c), which permits the court to decline to terminate parental rights based on the parent-child bond. *See In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). The juvenile court acknowledged the mother and child shared a bond but also determined the child's safety would have been compromised had she been returned to her care. We agree, and we conclude termination is in this child's best interests and no permissive statutory exception should be applied to preclude termination.

We affirm the decision of the juvenile court to terminate the mother's parental rights.

**AFFIRMED.**